# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **JOSEPH MILLER,** | : | |
| | : | **2:13-CV-00124 (Miller)** |
| **Plaintiff,** | : | **2:13-CV-00125 (Crozier)** |
| | : | **2:13-CV-00126 (Coleman)** |
| **v.** | : | **2:13-CV-00127 (Gibbs)** |
| | : | **2:13-CV-00129 (Johnson)** |
| **FOOD CONCEPTS INTERNATIONAL,** | : | **2:13-CV-00130 (Troyer)** |
| **LP, et al,** | : | **2:13-CV-00132 (Tigner)** |
| | : | **2:13-CV-00133 (McEldowney)** |
| **Defendants.** | : | **2:13-CV-00134 (Keegan)** |
| | : | |
| | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| | : | **Magistrate Judge Deavers** |
| | : | |

## OPINION & ORDER

This matter comes before the Court on Plaintiffs' Motion for Attorney's Fees and Costs ("Motion for Attorney's Fees") for the cases filed by Plaintiffs Joseph Miller (2:13-cv-00124), Teddy Crozier (2:13-CV-00125), Komekeo Coleman (2:13-CV-00126), Eric Gibbs (2:13-CV-00127), Stacie Johnson (2:13-CV-00129), Lucas Troyer (2:13-CV-00130), Angie Tigner (13-CV-132), Amanda McEldowney (2:13-CV-00133), and Jamie Keegan (2:13-CV-00134) (collectively, "Plaintiffs") against Food Concepts International, LP ("Food Concepts"), Abuelo's International LP ("Abuelo's"), Mark Myers, and Darren DelVecchio (collectively, "Defendants"). Plaintiffs filed the Motion for Attorney's Fees in Miller's case only. (Doc. 191.) For the following reasons, Plaintiffs' Motion for Attorney's Fees is **GRANTED with modifications**.

# I. BACKGROUND

Plaintiffs' original complaints, filed in January 2013 in the Franklin County Court of Common Pleas, alleged various causes of action against Defendants, such as: sex discrimination; negligent hiring, supervision, and retention; intentional infliction of emotional distress; violation of state and federal minimum wage and overtime laws; and wrongful termination. (Doc. 1-1.)[1] The original complaints, albeit long, were short on facts pertaining to Plaintiffs. Defendants removed the cases to federal court on February 12, 2013. (Doc. 1.)

Over the next eight months, following multiple requests from Defendants, the Court issued several orders requiring Plaintiffs to file amended complaints that complied with the basic notice requirements of Federal Rule of Civil Procedure 8(a). (Docs. 9, 16, 27.) When Plaintiffs' counsel finally filed amended complaints on October 15, 2013, it became clear that these amended complaints, too, failed to comply with the Court's orders and the federal rules. Consequently, Magistrate Judge Mark Abel was compelled to order Plaintiffs to show cause why their lawsuits should not be dismissed. (Doc. 30.)

On October 25, 2013, Plaintiffs filed a third version of their complaints to their responses to Magistrate Judge Abel's Order to Show Cause. (Doc. 31.) With no explanation or request for leave, some Plaintiffs attached a fourth version on November 18, 2013. (*See*, *e.g.*, Doc. 33.) Depending on the Plaintiff, these complaints alleged causes of action for: (a) wage and hour violations of the Fair Labor Standards Act (FLSA); (b) breach of contract; (c) retaliation under state and federal law; (d) aiding and abetting discrimination in violation of state law; (e) a hostile work environment; and/or (f) retaliation/loss of job benefits. (Doc. 36.) On January 17, 2014, Magistrate Judge Abel conducted an exhaustive review to see whether these versions could pass

---

[1] For ease of reference, unless otherwise indicated, docket citations refer to documents filed in the Miller case, 2:13-cv-124.

muster under Rule 8(a) notice pleading. (Doc. 36.) Alas, large sections of them could not, and Magistrate Judge Abel recommended that Plaintiffs' retaliation and aiding and abetting claims be dismissed with prejudice, as well as the vast majority of their hostile work environment claims. (Doc. 36.) Magistrate Judge Abel recommended that Plaintiffs' claims under the FLSA for breach of contract for wages and benefits, as well as Johnson's hostile work environment claims, be allowed to proceed. (Doc. 36.) No party objected, and, on February 18, 2014, this Court adopted the Report and Recommendation. (Doc. 38.)

The next several months were punctuated by discovery disputes (*see*, *e.g.*, Docs. 45, 50, 53, 61, 62, 79), Plaintiffs' unsuccessful motion for sanctions following a mailing mix-up, (Docs. 47, 69), and Plaintiffs' attempt to file a second amended complaint. (Doc. 60.) Magistrate Judge Abel denied Plaintiffs' motion for leave to file a second amended complaint on February 18, 2015. (Doc. 82.) At least one Plaintiff objected to the order, (*see, e.g.*, Tigner Doc. 62), and this Court overruled that objection. (Tigner Doc. 66.) Plaintiffs also filed a motion for prejudgment attachment of Defendants' assets, (Doc. 90), which, following a hearing, this Court denied for lack of valid justification. (Doc. 119 at 5.)

Defendants filed motions for summary judgment on July 5, 2016. (Doc. 156.) Plaintiffs filed oppositions to Defendants' motions for summary judgment on August 29, 2016, (Doc. 173), and the parties also litigated a motion to strike the affidavits filed with Plaintiffs' oppositions. (Docs. 178-82.) On March 29, 2017, the Court granted Defendants' motions for summary judgment on all of Plaintiffs' claims, with the exception of their FLSA wage and hour claims against Defendants Abuelo's and Food Concepts. (Doc. 184 at 56.) The Court also granted in part Defendants' motion to strike.

On June 1, 2017, at a Court-held mediation, the parties settled their remaining FLSA wage and hour claims. (Doc. 188.) In connection with the settlement, the parties agreed to allow the Court to determine the reasonableness of Plaintiffs' attorney's fees and costs. Plaintiffs' counsel submitted the instant Motion for Attorney's Fees on July 14, 2017, (Doc. 191), and the parties submitted additional evidence at a reasonableness hearing on Thursday, October 5, 2017. The Motion for Attorney's Fees is now fully briefed, argued, and ripe for review.

## II. STANDARD OF REVIEW

To a prevailing plaintiff following a FLSA action, FLSA provides a "reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). This Court must ensure that an attorney's fee is "reasonable." *Id.*; *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir. 2004). The starting point for such a calculation is the "lodestar" method: multiplying the "number of hours reasonably spent on the case by an attorney times a reasonable hourly rate." *Moore*, 355 F.3d at 565. Then, "[t]hat amount may . . . be adjusted upwards or downwards, as the district court finds necessary under the circumstances of the particular case." *Id.* The party seeking a fee award must "submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A fee is reasonable if it is "adequately compensatory to attract competent counsel yet . . . avoids producing a windfall for lawyers." *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007) (internal quotations omitted) (emphasis omitted).

The Court may also tax the following costs: "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of

making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; [and] (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." 28 U.S.C. § 1920. It is preferable that the prevailing party include supporting documentation. *Mikaloff v. Walsh*, No. 5:06–96, 2009 WL 901860, at *11 (N.D. Ohio Mar. 30, 2009).

### III. ANALYSIS

Plaintiffs seek $**1,026,316.10** for attorney's fees and $**102,325.72** in costs, plus 3%, or $**30,789.48**, for "fees for fees," for a total of $**1,159,431.30**.[2] Defendants have raised a number of objections to Plaintiffs' fee petition, including to the requested rates, hours, and costs. (Doc. 194.) The Court will address each *seriatim*.

### A. Reasonable Hourly Rates

In determining a reasonable hourly rate, "[t]he appropriate rate . . . is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *Sykes v. Anderson*, 419 F. App'x 615, 618 (6th Cir. 2011) (internal quotations omitted). The market rate is "the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Gonter v. Hunt Valve Co.,* 510 F.3d 610, 618 (6th Cir. 2007). Comparable skill and experience, of course, means skill and experience in the specific area of law at issue in the case. *Snide v. Disc. Drug Mart, Inc.*, No. 1:11-cv-244, 2013 U.S. Dist. LEXIS 165584, *22-25 (N.D. Ohio Oct. 30, 2013).

---

[2] Plaintiffs are not consistent in their attorney's fee request—on pages 1 and 7, they request $1,023,816.10 for attorney's fees, plus 3% fees for fees. (Doc. 191 at 1, 7.) On page 5, however, they request $1,026,316.10 for attorney's fees, plus 3% fees for fees. (*Id.* at 5.) Because $1,026,316.10 coincides with the affidavits and exhibits attached to Plaintiffs' Motion for Attorney's Fees, the Court will assume Plaintiffs request $1,026,316.10.

In making its determination, the court may "consider a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience from handling similar requests for fees." *Ne. Ohio Coal. for the Homeless v. Husted*, No. 2:06-cv-896, 2014 WL 4829597, at *12 (S.D. Ohio Sept. 29, 2014) (vacated in part on other grounds) (quoting *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 499 (6th Cir. 2011)). The fee applicant bears the burden to "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 (1984).

The Sixth Circuit has looked to six considerations in determining the reasonableness of a rate:

> 1) the value of the benefit rendered to the [client], 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services on an hourly basis, 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides.

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974) (internal quotations omitted).

Plaintiffs seek an award based on a $325 hourly rate for Attorney James Meaney; a $229.33 hourly rate for Attorney Wesley Fortune; a $175 hourly rate for Attorneys Aikaterini Paragiou, Clint White, Nicole Derr, and Jessica Shields; and flat rates of $1,500 and $1,000, respectively, for Attorneys John Gonzalez and Gilbert Gradisar. (Docs. 191, 192-5 to 192-7, 192-8.) The rates requested for Fortune, Paragiou, White, Derr, and Shields equal the rates this Court awarded for parallel litigation on behalf of Rachel Autrey. *See Autrey v. Food Concepts, et al.* (Case No. 2:13-CV-00131, Doc. 85). Defendants, in turn, seek a $225 rate for Meaney—less

than the rate the Court awarded in *Autrey*. They also seek a $200 per hour rate for Fortune. (Doc. 194 at 39.)

When assessing the requested rates, the Court's starting place will be its fee award in *Autrey*, because Autrey raised essentially the same claims against the same Defendants as the Plaintiffs here, and she retained the same lawyers to do so.[3]

### 1. Meaney

When the Court considered the reasonable rate for Meaney in the Autrey Award, it had little information on which to base his rate. (Autrey Award at 8-10.) Autrey justified the rate for Meaney "by stating that he has practiced law for thirty-plus years and that he has litigated one Ohio Court of Claims case" that was unrelated to the claims at issue. (*Id.* at 8.) Autrey also pointed to the report by the Ohio State Bar Association, "The Economics of Law Practice in Ohio in 2013" ("OSBA Report"), which, based on a number of characteristics pertaining to Meaney—an attorney practicing in suburban Columbus, with 26-35 years of experience, specializing in labor and employment law, as a partner in a small firm—suggested that the requested $325 rate was too high. (*Id.*)

Ultimately, because Plaintiff did not meet her burden to "produce satisfactory evidence . . . that the requested rate [for Meaney was] in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," *Blum v. Stenson*, 465 U.S. 866, 896 (1984), the Court was forced to estimate a reasonable rate for Meaney based on averaging the aforementioned characteristics from the OSBA Report. (Autrey Award at 10.) This reasonable rate was $234.50 per hour. (*Id.*)

---

[3] In fact, most of the arguments addressed in Autrey's attorney's fee award have been rehashed here. These cases are intertwined with Autrey's, as evidenced by the fact that, in the Autrey fee award, the Court recognized Plaintiffs' counsel's work in the instant cases as well. (*See id.* at 18.) The Court shall hereinafter refer to the Autrey fee award as "Autrey Award."

Here, Plaintiffs provide further evidence for the requested $325 per hour rate. Specifically, Plaintiffs point to the affidavits of Meaney and of another attorney, John Marshall, who frequently testifies as to market rates for attorneys in central Ohio. Meaney asserts in his affidavit that he "ha[s] been licensed to practice law in the State of Ohio for nearly 40 years (since October of 1977) and ha[s] been involved with litigation matters during all of that time." (Meaney Aff't, Doc. 192-5, at ¶ 3.) He was also licensed to practice in the U.S. Virgin Islands, where he served as lead counsel in hundreds of asbestos litigation cases between 1997 and 2004. (*Id.*) He focused on non-employment-related matters until "[a]pproximately six years ago [when he] expanded [his] practice to include employment law matters[.]" (*Id.* ¶ 4.) Since then, Meaney has handled employment law cases, including under the FLSA. (*Id.*) He was co-counsel with Fortune on Plaintiffs' cases from July 2013 through July 2014. During that time, and continuing on to now, he billed $325 per hour.

Marshall "ha[s] been lead counsel in hundreds of civil rights and employment cases filed in the federal and state courts" over the last 32 years, as well as co-counsel on a number of others. (Marshall Aff't, Doc. 193, at ¶ 3.) His legal acumen has been recognized by a number of publications: he was named one of the Best Lawyers in America from 1996 to present, one of the Top 100 Lawyers in Ohio by Ohio "Super Lawyer" magazine from 2009-2016, one of the "Top 10 lawyers in Ohio" from 2011-2013, and one of the "Top 5 Columbus Area Super Lawyers for 2012, 2013, 2015, and 2016. (*Id.* ¶ 4.) He was also "selected as the 2012 and 2014 Lawyer of the Year in Employment Law – Individuals, as well as a Top 50 lawyer in Columbus by Best Lawyers and US News and World Report (2010-2013)." (*Id.*) Marshall presents and teaches seminars on employment law and litigation, including on the issue of attorney's fees, (*id.*), and he has also been called upon on several occasions to opine as to the reasonableness of attorney

rates and hours.  (*Id.* ¶ 5.)  Marshall opines that a $325 hourly rate for Meaney "is within the fair and reasonable market rate for the services rendered by Mr. Meaney."  (*Id.* ¶ 9.)  He also "personally know[s] Mr. Meaney and ha[s] worked with him on employment related matters and can affirmatively state that he can and has commanded a rate of $325.00 per hour in similar cases."  (*Id.*)

Defendants, for their part, argue briefly that a $325 per hour rate for Meaney is "excessive," because it "is in the 95th percentile for attorneys in Suburban Columbus.  It is in the 90th percentile for a firm of his size.  And it is in the 75th percentile for billing rates based on his years in practice."  (Doc. 194 at 39.)  Defendants further posit that "Plaintiff provides no documentation to justify that the rates are reasonable given Mr. Meaney's relative experience or expertise in wage and hour matters."  (*Id.*)  They ask the Court to award a $225 per hour rate[4] for Meaney, based on the median rate "for attorneys with his relative experience and firm size in the Suburban Columbus area."  (*Id.*)

Defendants' arguments are not well taken.  The Court notes, first, that averaging the relevant factors from the OSBA Report, as the Court did in the Autrey Award, yields a rate of $234.50 per hour, not $225.  Second, the Court had arrived at this $234.50 rate in the Autrey Award "in the absence of evidence provided by Plaintiff."  (Autrey Award at 10.)  Here, though, Plaintiffs have provided additional evidence.  *Blum*, 465 U.S. at 896.  Based on that evidence, as well as "state bar association guidelines, and [the Court's] own knowledge and experience from handling similar requests for fees," *H*, 2014 WL 4829597, at *12 (internal quotations omitted), the Court finds that an hourly rate of **$325** is reasonable for Meaney.

---

[4] In a different part of their brief, Defendants seek the $234.50 per hour rate used in Autrey.  (Doc. 194 at 7.)

## 2. Fortune

In the Autrey Award, the Court found a $229.33 rate for Fortune to:

> Represent[] an appropriate balance between society's interest in vindicating wage and hours plaintiffs' rights, with the value actually rendered to Ms. Autrey. The rate of $229.33 also reflects Fortune's having taken Ms. Autrey's case on a contingency fee basis, the complexity of the litigation, and his approximately six-years' experience in the field.

(Autrey Award at 12.) Marshall opines that the requested hourly rate for Fortune "is on the low end of the fair and reasonable market value for the services rendered by Mr. Fortune and attorneys of similar background and experience in this type of litigation." (Marshall Aff't, Doc. 193, at ¶ 8.)

Defendants attack this rate on the grounds that "the many litigation deficiencies" in the case make it "clear that a further reduction in Counsel's proposed rate [to $200 per hour] is appropriate." (Doc. 194 at 39.)

The Court recognizes the inefficient manner in which these cases were litigated. These deficiencies were present in Autrey's case as well. However, Plaintiffs were more successful in extracting settlement funds from Defendants than Autrey, who accepted an offer of judgment. In fixing a reasonable rate, the Court must balance multiple concerns, including the value of the benefit rendered to Plaintiffs, society's interest in vindicating Plaintiffs' rights in wage and hours claims, Fortune's having taken these cases on a contingency fee basis, the value of the services Fortune provided, the complexity of the litigation, and Fortune's experience. For these reasons, as well as the reasons expressed in the Autrey order, the Court finds a $229.33 rate for Fortune to be reasonable.

## 3. Associates, Staff, and Gonzalez and Gradisar

Defendants do not attack the rates of associates and staff in Fortune's office, or those of Gonzalez and Gradisar. Instead, Defendants attack the reasonableness of their hours. Therefore,

as it did in Autrey, and for the reasons stated in the Autrey Award, the Court finds a $175 per hour rate to be reasonable for Fortune's associates—Parigiou, White, Derr, and Shields—and an $85 per hour rate to be reasonable for Fortune's Legal Assistant.

As for Gonzalez and Gradisar, Marshall attests:

> [T]he flat rate fee for John Gonzalez of $1500.00 and Gilbert Gradisar of $1000.00 was fair and reasonable for the services they rendered to Plaintiffs through their limited appearances. Based upon their standard hourly rates of $300.00, which is within the reasonable market value for service[s] rendered by attorneys with their respective background[s] and experience, the number of hours they spent on Plaintiffs' behalf and the result obtained, the fee is justified.

(Marshall Aff't, Doc. 193, at ¶ 10.) Because Defendants fail to contest these rates, and in light of Marshall's affidavit, the Court finds them to be reasonable.

In summary, the Court will apply the following rates:

| Timekeeper | Hourly Rate |
|---|---|
| Meaney | $325 |
| Fortune | $229.33 |
| Parigiou | $175 |
| White | $175 |
| Derr | $175 |
| Shields | $175 |
| Legal Assistant | $85 |
| | |
| | **Flat Rate** |
| Gonzalez | $1,500 |
| Gradisar | $1,000 |

## B. Hours Reasonably Expended

In determining the hours reasonably expended, "[t]he question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief requested. Rather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Indus.*, 898 F.2d 1169, 1173 (6th

Cir. 1990). Attorneys seeking fees must "maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended on the case" and "should exercise billing judgment with respect to hours worked." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008) (quoting *Wooldridge*, 898 F.2d at 1177) (internal quotation marks omitted). The Court must "conclude that the party seeking the award has sufficiently documented its claim." *Id.* (internal quotations omitted).

The Court need not "achieve auditing perfection[.]" *Fox v. Vice*, 563 U.S. 826, 838 (2011). Indeed, "[t]here is no precise rule or formula for making these determinations." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). In lieu of line-by-line reductions, the Court "may implement an 'across-the-board reduction by a certain percentage.'" *Project Vote v. Blackwell*, No. 06-CV-1628, 2009 WL 917737, at *6 (N.D. Ohio Mar. 31, 2009) (citing *Alliance Int'l, Inc. v. United States Customs Serv.*, 155 F. App'x 226, 228 (6th Cir. 2005)). The Court may also "take into account [his] overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Plaintiffs seek remuneration for work completed by Fortune, and attorneys and staff in Fortune's office, in the following amounts:

| Timekeeper | Rate | Hours | Total Fees |
|---|---|---|---|
| Paragiou | $175 | .9 | $157.50 |
| White | $175 | 1.8 | $315 |
| Derr | $175 | 10.25 | $1,793.75 |
| Shields | $175 | 72.517 | $12,690.48 |
| Fortune | $229.33 | 4,574.70 | $958,597.71 |
| Clerks | $85 | 5.4 | $459 |
| Legal Assistant | $85 | 373.06 | $31,710.10 |
| | **Total** | **5,038.627**[5] | **$1,005,723.65**[6] |

---

[5] The summary attached to Doc. 191-1 calculates the total number of hours to be 5,107.308. Using Plaintiffs' further breakdown from Exhibit L, however, the Court reaches a total of 5,038.627. Because this latter number corresponds with the total dollar amount requested, with the exception of the $.11 error referenced in footnote 6, the Court will use it.

(Reasonableness Hearing, Plaintiffs' Ex. L.)  This request accounts for a write-off of 463.253 hours (or $96,846.985) spent by Fortune and Shields, clerks, and Fortune's legal assistant.  (*Id.*)  Plaintiffs also seek **$18,092.50** for the work of Meaney.  (Doc. 191 at 5.)  By dividing this figure by his rate of **$325** per hour, one finds that Plaintiffs seek remuneration for **55.67** hours spent by Meaney on these cases.  Plaintiffs also seek **$1,500** for time spent by Gonzalez preparing an opposition to Defendants' motion to disqualify Plaintiffs' counsel (Doc. 192-6), and **$1,000** for time spent by Gradisar preparing an opposition to Defendants' motion for fees and costs following the Court's disqualification of proffered expert witness Stephen Oberhousen.  (Doc. 192-7.)

Plaintiffs state that the lodestar method would result in a fee request of $**1,026,316.10**, including **$1,005,723.65** for the work of Fortune and his law firm, **$18,092.50** for the work of Meaney, **$1,500** for the work of Gonzales, and **$1,000** for the work of Gradisar**.**  Plaintiffs also request an additional three percent of the total award as compensation for prosecuting the attorney's fee motion.  *Auto Alliance Int'l, Inc. v. United States Customs Serv.*, 155 F. App'x. 226, 229 (6th Cir. 2005) (recovery for prosecuting fees motion "should not exceed three percent of the hours in the main case which is decided without trial.").  Therefore, Plaintiffs request an additional $**30,789.48** for this fees motion, for a total fee request of **$1,051,105.58**.  (Doc. 191.)

Defendants claim that Plaintiffs' requested hours and time entries are unreasonable to the extent they include: (1) pre-claim time and time spent on other matters; (2) fees related to unsuccessful motions or Plaintiffs' non-compliance with Court orders; (3) fees that are questionable due to poor billing practices, like non-contemporaneous time entries, block-billed

---

[6] Exhibit L calculates the total fee request to be $1,005,723.65.  The Court calculated the number to be $1,005,723.54.  Because the difference is de minimis, the Court will use Plaintiffs' figure, which is slightly larger.

time entries, excessive entries, vague and indecipherable entries, and entries by improper timekeepers; (4) fees related to administrative work; (5) too many hours billed by Meaney; and (6) fees for fees. Defendants also argue that the fee request is excessive generally, and they attack the proportionality of the requested fee award. Defendants posit that Plaintiffs' counsel should receive a total of **$50,857.03** in attorney's fees for these nine cases, to include **$48,607.03** to Fortune's firm and **$2,345** for Meaney's services. (Doc. 194 at 10.)

### 1. Pre-Claim Time and Time Spent on Other Case-Related Matters

Plaintiffs' complaints were filed in January 2013. (Doc. 1.) Plaintiffs' counsel has been involved in cases against Defendants since at least 2011, many of which have settled to include attorney's fees. These cases include *Justin Sowell v. Food Concepts, et. al*, No. 2:12-cv-00543, *Stephanie Swint v. Food Concepts, et. al*, No. 2:12-cv-00480, *Mark Smith II v. Food Concepts, et. al.,* 12-cv-7144, *Nicholas B. Valentine v. Food Concepts, et al.,* 12-cv-07120, *Elizabeth Klimek v. Food Concepts, et. al*, No. 2:15-cv-2473, *Justin Thomas v. Food Concepts, et. al*, No. 2:15-cv-2596, and *Cassandra Epperly v. Food Concepts, et. al*, No. 2:15-cv-2597.

Defendants argue that Plaintiffs billed time properly attributable to certain of these other cases, as well as *Linihan v. Food Concepts*, Case Nos. 2:15-cv-2746 and 2:15-cv-2473. (Doc. 194 at 9-12.) For example, Plaintiffs seek fees for time beginning in September 2011, including time spent in telephone conferences with defense counsel. (*Id.* at 9-10.) These Plaintiffs did not sign their engagement agreements with Plaintiffs' counsel until much later, however—most between March and May 2012, and one in January 2013. (Doc. 194 at 9.) And Plaintiffs did not reveal their names to Defendants until after they filed their complaints in January 11, 2013. (Doc. 1-1; Doc. 194 at 9-10.) By October, 2011, however, Fortune *had* filed a complaint for

Justin Sowell. And in 2012, Fortune filed complaints for Mark Smith, Nick Valentine, and Stephanie Swint.

Plaintiffs respond that "Defendants' contention that fees begin with the filing of a complaint ignores reality. Not only are many cases settled without litigation, there is always a considerable amount of time spent by lawyers developing cases pre-suit. All of the plaintiffs were represented in September of 2011 and early communications between counsel demonstrate that these pre-suit claims were discussed." (Doc. 196 at 6.) In support, Plaintiffs reference two communications to defense counsel seeking pre-suit settlement of unnamed Plaintiffs' cases: one December 2011 letter mentioning five potential plaintiffs, and one April 2012 email mentioning 11 potential plaintiffs. (Reasonableness Hearing, Plaintiffs' Ex. H; Doc. 194-5.)

Fortune also testified at the reasonableness hearing that he spent time pre-suit interviewing Plaintiffs and reviewing depositions and evidence from related cases. He explains the late engagement agreement dates by reference to the fact that he did not learn until later that he needed engagement agreements in order to file Plaintiffs' complaints.

The Court finds that some of Plaintiffs' pre-claim fees are related to other cases and that it would be unreasonable to tax those fees to Plaintiffs' cases. Because it is unclear from the documentation exactly when Plaintiffs' counsel began litigating for these plaintiffs rather than (or addition to) his other clients, the Court finds that a **reduction** in **Fortune's time** by **100 hours** and in **Shields' time** by **18.4 hours**[7] for pre-claim time to be appropriate.

Defendants argue that certain of Plaintiffs' fees relate to depositions taken in other cases. In late 2012, Fortune deposed Ed Linihan and Justin Sowell. Fortune also deposed Oscar

---

[7] This 18.4 hours represents Shields' 2.3 hours billed on behalf of each of eight plaintiffs on research related to "Columbus Ordinance 2331.03, sexual orientation, Title VII, same sex, sexual harassment, Oncale, Biddy and Grove cases," which has bearing on other cases but not Plaintiffs'. (*e.g.,* Doc. 191-2 at 1.)

Hernandez, in support of Mark Smith's case, and he deposed Sowell, Valentine, Swint, and Smith in connection with their own cases. Plaintiffs seek fees for time spent attending these depositions, which Defendants argue is improper. Plaintiffs respond that the time billed for these depositions was to *review* them rather than to *attend* them. The Court's review shows time billed not simply to review, but also to prepare for and to attend the depositions of Linihan, Valentine, Smith, Lucinan, and Hernandez.

The Court recognizes it may be reasonable to tax fees to Plaintiffs for depositions taken in other cases when those fees directly benefit Plaintiffs. But the Court finds it troubling that at least some of these depositions relate to cases the parties settled because those prior settlements included attorney's fees. Plaintiffs have not made a specific showing that the Valentine, Smith or Hernandez depositions specifically benefited them. *O'Brien v. Ed Donnelly Enters., Inc.,* 575 F.3d 567, 577 (6th Cir. 2009) (allowing fees related to another case, but not without a "specific showing of benefit" to the plaintiffs in the instant case.) Therefore, the Court finds that it is appropriate to reduce Fortune's time by **50 hours.** *See also Ne. Ohio Coal. for the Homeless v. Brunner*, 652 F.Supp.2d 871, 884–85 (S.D. Ohio 2009) (disallowing fees for work performed on matters tangentially related to the lawsuit for which fees were sought).

Defendants also note that Plaintiffs seek fees for time spent during their own depositions, in connection with the Mark Smith case, which was settled to include attorney's fees. Plaintiffs respond that "Civil Rule 32 allows the use of any deposition against a party under a variety of situations." (Doc. 196 at 7.) Plaintiffs do not address the fact that they received attorney's fees for the Mark Smith case. But Plaintiffs' billing records do not appear to include much, if any, time spent in October 2013 attending Plaintiffs' depositions. Therefore, the Court declines to reduce hours on this basis.

As a result of the above analysis, the Court **reduces Fortune's** hours by **150**, and **Shields'** hours by **18.4**.

### 2. Entries Related to Unsuccessful Motions or Non-Compliance with Court Orders

Defendants seek to reduce fees related to unsuccessful claims and motions and Plaintiffs' non-compliance with court orders. (Doc. 194 at 12-26.) In particular, Defendants point to the "amended complaint debacle," billing entries related to disqualified expert Stephen C. Oberhousen, and discovery and other motions practice.[8]

Regarding the "amended complaint debacle," Plaintiffs argue that they "removed fees associated with the failed complaints." (Doc. 196 at 8.) They claim that they billed only 14.2 hours in connection with the original complaints, and 596.99 hours in connection with the operative complaints. (Reasonableness Hearing, Plaintiffs' Ex. G.) Defendants take a more expansive view of the "amended complaint debacle," including in its reach.

Even a cursory look at Plaintiffs' time records reveals that counsel did not, in fact, remove all fees associated with the failed complaints. (*See*, *e.g.*, Doc. 191-2 through 5, & 192-1 through 4, at 4.) For example, Plaintiffs billed not 14.2, but more than seventy hours to draft their initial complaints. (Docs. 191-2 – 5 at Page 4, 192-1 – 4 at Page 4, 192 at Page 5.) They also billed for time associated with their attempted but failed second amended complaints. (*See, e.g.,* Doc. 191-2 at Pageid # 11916.) And they devoted more than a dozen pages of their oppositions to Defendants' motions for summary judgment to tip share and records-related claims that they did not plead in their complaints. (Doc. 171.)

Plaintiffs also argue that they removed fees related to Oberhousen. (Doc. 191 at 5.) The fees remaining, according to Plaintiffs, pertained to "the non-expert work used by Plaintiffs to

---

[8] The Court will address the parties' arguments related to overall success in its Proportionality and Success section, *infra*.

determine damages." (Doc. 196 at 8.) Much time was required during discovery, Plaintiffs argue, to review over 60,000 pages and convert them to a readable format. (*Id.* at 5-6.) Fortune further explicated this process at the reasonableness hearing. According to Fortune, he had to hire twelve people, full-time, for two months, to convert this data. Oberhousen was an integral part of this process. Defendants poke at this last point by saying that they provided the most voluminous records in three, computer-readable formats. (Doc. 194 at 23.)

Finally, Plaintiffs argue that they removed fees related to their unsuccessful pre-judgment attachment motion. (Doc. 191 at 5.) Defendants pointed out at the reasonableness hearing, and Fortune agreed, that Plaintiffs actually removed time *writing* their motions, but not ancillary related work like reviewing Defendants' opposition to their motions.

As the Court noted above, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Indus.*, 898 F.2d 1169, 1173 (6th Cir. 1990).

The Court has seen Plaintiffs' case through its various steps and missteps. The amended complaint saga did not end after Magistrate Judge Abel pared down the operative complaint; Plaintiffs attempted to file a second amended complaint based on Defendants' alleged discovery misconduct. (Doc. 60.) Because Plaintiffs "failed to identify with specificity what discovery requests were improperly responded to or what specific facts were learned from discovery justifying the need to amend at this late date," the court denied their motions to amend. (Doc. 82 at 8-9.) Moreover, Plaintiffs' responses in opposition to Defendants' motions for summary judgment appeared to be thinly veiled attempts to amend their complaints yet again. Pages of the oppositions were devoted to tip-share and records claims that did not appear in the operative complaints. A reasonable attorney would not have believed this work to be "reasonably

expended in pursuit of success at the point in time when the work was performed." *Wooldridge*, 898 F.2d at 1173. A reasonable attorney would have filed a complaint in the first instance that met the basic pleading requirements. Even if the Court were to use Plaintiffs' data—that they billed 596.99 hours on the operative complaints and 14.2 hours on the original complaints—this amount of time is unreasonable. The Court has reviewed both the original and the operative complaints; aside from a few short paragraphs, they are identical.

Regarding Oberhousen, the Court finds that Plaintiffs properly removed his "expert" fee. But that fee is merely a fraction of the purported 3,308 hours, or $633,137.43, spent on discovery in these cases. (Reasonableness Hearing, Plaintiffs' Ex. G.) While the Court is sensitive to the need to convert data into a useable format, it is unfathomable that this process would cost more than $600,000 for 60,000 pages of documents.

As for the pre-judgment attachment motion, Plaintiffs' distinction between time spent *writing* the motion versus time spent on related tasks like reading the opposition, is unreasonable; Plaintiffs should have deducted all time related to the pre-judgment attachment motion.

In addition, Plaintiffs' counsel spent time preparing discovery requests that did not comply with the federal rules. Plaintiffs' counsel suggests that he believed a request by Magistrate Judge Abel to "prepare interrogatories and admissions to narrow the disputed facts for trial" gave him permission to submit discovery requests that exceeded the permissible number. (Fortune Aff't, Doc. 197, at ¶ 12.) Since Magistrate Judge Abel never mentioned a number, Fortune's assumption was unreasonable. Therefore, the time spent preparing 182 requests for admission, rather than 40, as required by the rules, should not be taxed to Defendants.

On the other hand, a reasonable attorney may believe it necessary to move to compel discovery if she feels she is not obtaining all pertinent documents, or to subpoena a third party to obtain additional documents. A reasonable attorney may also believe it necessary to consult with additional parties who may or may not have been deemed "experts" in the litigation. And a reasonable attorney may oppose a party's motion to extend the dispositive motions deadline or seek discovery related to claims that ultimately failed. Therefore, the Court will not reduce Plaintiffs' fees on these bases.

In sum, a reasonable attorney would not believe the following "work to be reasonably expended in pursuit of success at the point in time when the work was performed," *Wooldridge*, 898 F.2d at 1173: (a) taking the Court and defense counsel in circles for months because of a refusal or inability to file complaints that are compliant with Federal Rule of Civil Procedure 8, including as far into the process as Plaintiffs' oppositions to Defendants' motions for summary judgment; (b) spending in excess of $600,000 to convert 60,000 pages of discovery into a readable format; (c) billing time in any way related to the pre-judgment attachment motion; or (d) preparing obviously noncompliant discovery requests. Because each of these actions took a significant amount of time, and because they appear to manifest in Plaintiffs' billing records as hours spent by Fortune, the Court finds it necessary to **reduce Fortune's hours** by a significant margin—**500 hours.**

### 3. Questionable Billing Practices, Including Non-Contemporaneous Time Entries, Block-Billed Entries, Excessive Time Entries, Vague or Indecipherable Entries, Entries by Improper Timekeepers, and Duplicative Work

Defendants argue that Plaintiffs submitted non-contemporaneous time entries, improper block-billed entries, excessive time entries, vague or indecipherable entries, and that they billed for work conducted by improper timekeepers and duplicative work.

First, Defendants react to Plaintiffs' attempt to clarify vague time entries in response to the Autrey Award, which reduced Plaintiffs' fees for vague time entries. The Court does not find that Plaintiffs' counsel failed to keep contemporaneous records of his time, and therefore declines to reduce the fee award on this basis.

Second, Defendants argue that Plaintiffs' block-billed entries make it burdensome "for anyone, whether defense counsel or the Court, to go through each specific item in a blocked entry and determine what, if any part of the time entry is appropriate." (Doc. 194 at 28.) Defense counsel appears to be reacting not to block billing, but rather to entries that contain multiple tasks, each with a task-specific parenthetical containing the time spent. (Doc. 194 at 28.) The block billing cases Defendants cite do not pertain to entries with such parenthetical divisions. *See, e.g., Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F. Supp. 1017 (N.D. Ohio 1997) ("Here, although counsel specified the general subject matter of tasks performed, the billing records, which itemize time on a daily basis, rather than by task, make it impossible to determine the amount of time spent on each task. Because numerous entries are 'lumped' together under one total, the court is left to approximate the amount of time which should be allocated to each task and unable to determine the reasonableness of many of the hours expended"). Unlike in *Cleveland Area Bd. of Realtors* and related cases, Plaintiffs *did* enumerate the amount of time spent on each task. Therefore, the Court will not deduct time for block billing.

Third, Defendants argue that the amount of time spent on certain tasks is excessive in light of the considerable overlap in Plaintiffs' cases. For example, at the reasonableness hearing, Defendants pointed out that Plaintiffs' counsel billed exactly three hours each to read Defendants' motions for summary judgment, resulting in a total bill of 27 hours to read these

motions.[9]  Even assuming the grand coincidence of nine identical time entries, billing twenty-seven hours to read nine substantially similar motions is excessive.  Defendants' expert, Fred G. Pressley, Jr., who has practiced employment litigation for 38 years, agreed.  (*See* Doc. 194-4.) Pressley noted at the reasonableness hearing that he would expect an attorney to read those motions in 20-33% of the time billed.  He also opined that Fortune's bills are excessive generally.  For example, Pressley would expect an employment lawyer with nine similarly-situated plaintiffs to be more efficient by filing a collective action or a class action hybrid.  He also noted the straightforward nature of plaintiffs' off-the-clock claims, and expressed surprise that the billing records indicated fifteen months of case development before Fortune even filed Plaintiffs' complaints—complaints which, after all that, failed to meet basic pleading standards. Pressley also expected Fortune to get more efficient over time as he got to know his cases—an assumption that did not bear out in the time sheets.  And Pressley found Fortune's hours spent on the pleadings, depositions, and motion for summary judgment, to be excessive.  Pressley concluded that, potentially because Fortune was in over his head, he conducted lots of "treadmill" work without getting a good result for the client.

Having reviewed Plaintiffs' time records, and listened to the testimony of Fortune and Pressley at the reasonableness hearing, the Court finds that Fortune racked up excessive fees on

---

[9] Plaintiffs' billing records include the following entries for "Review Def Motion for Summary Judgment:"

| Plaintiff | Hours Billed | Date | Source |
|-----------|--------------|------|--------|
| Miller | 3 | 7/6/16 | 191-2, at Pageid # 11933 |
| Crozier | 3 | 7/5/16 | 191-3, at Pageid # 11981 |
| Coleman | 3 | 7/5/16 | 191-4, at Pageid # 12032 |
| Gibbs | 3 | 7/5/16 | 191-5, at Pageid # 12081 |
| Johnson | 3 | 7/5/16 | 192, at Pageid # 12181 |
| Troyer | 3 | 7/6/16 | 192-1, at Pageid # 12130 |
| Tigner | 3 | 7/6/16 | 192-2, at Pageid # 12232 |
| McEldowney | 3 | 7/6/16 | 192-3, at Pageid # 12283 |
| Keegan | 3 | 7/6/16 | 192-4, at Pageid # 12331 |

cases that were relatively straightforward. Because Plaintiffs have billed excessive fees, the Court finds a **thirty-three percent reduction in Fortune's hours** to be necessary to bring them within the realm of the reasonable.

Fourth, Defendants argue that many of Plaintiffs' time entries contain vague descriptions that "fail to define the purpose of the work." (Doc. 194 at 39.) For example, an entry for January 22, 2014, provides: "call with J. Meaney regarding plan of action." (Doc. 191-2 at Pageid # 11903.) And an entry for March 20, 2014, reads: "Interoffice meeting re case update and strategy." (*Id.* at Pageid # 11905.) These vague entries are the exception, not the norm, however. The Court recognizes the vast improvement in Plaintiffs' billing entries since the Autrey Award, and, as such, will not reduce Plaintiffs' hours on that basis.

Fifth, as they did in *Autrey*, Defendants argue that Plaintiffs should not have billed for time spent by Clint White, Aikaterini Paragiou, Nicole Derr, and Jessica Shields, associates at Fortune's law firm who did not enter appearances. (Doc. 194 at 35.) Defendants also argue that Plaintiffs should not have billed for the time of Fortune's legal assistant, or for time billed by clerks or by John Marshall, John Gonzalez, or Gilbert Gradisar. (*Id.* at 35-36.)

Defendants' arguments regarding the associate attorneys and the legal assistant are simply rehashes of their arguments in *Autrey*. Again, Defendants cite no support for the proposition that Plaintiffs should not bill for work by attorneys who did not enter appearances or for legal assistants, and, as the Court noted in Autrey, attorneys often receive compensation for hours spent on the case by paralegals. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008). For the same reasons stated in *Autrey*, the Court declines to cut the hours of all attorneys and staff who did not enter appearances in the cases. On the other hand, the Court

may not award fees for hours billed by "clerks" who remain unnamed. The Court therefore declines to award the **5.4 hours** billed by unnamed clerks.

The Court also declines to reduce hours spent by Marshall, because there is no indication that Plaintiffs billed for his services. The Court also declines to reduce the fees for Gonzalez, because Gonzalez prepared an opposition to Defendant's motion to disqualify Fortune—an indirect benefit to Plaintiffs. Gradisar, however, only prepared an opposition brief to Defendants' motion for sanctions related to the disqualified expert, Oberhousen. This work benefited Fortune, not the Plaintiffs; and because Fortune should not have hired Oberhousen in the first place, efforts to contain the consequences of this choice should not fall on Defendants. The Court therefore **allows Gonzalez's fee of $1,500**, but **rejects Gradisar's fee of $1,000.**

Sixth, Defendants argue that Plaintiffs have billed time for duplicative work. (Doc. 194 at 33-34.) After a review of the records, the Court finds that there was minimal unnecessary duplication.

In sum, based on the analysis in this section, the Court reduces Fortune's hours by 20%, and does not include in its fee award $1,000 for the work of Gradisar, or the 5.4 hours billed by unnamed clerks.

### 4. Administrative Work

Defendants argue that Plaintiffs should not be compensated for purely clerical or secretarial tasks that require no legal skill or training. Defendants are correct that "purely clerical or secretarial tasks should not be billed (even at a paralegal rate), because '[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.'" *Gibson v. Scott*, No. 2:12-cv-11282014 U.S. Dist. LEXIS 20576 (S.D. Ohio Feb. 19, 2014). Plaintiffs improperly billed for time spent by Fortune's legal assistant at

interoffice meetings, for example.  (*See* Doc. 191-2 at Pageid # 11905, 11909, and Pressley's testimony that it would be inappropriate for Fortune to bill for his legal assistant to attend interoffice meetings.)

Plaintiffs claim that they have omitted all purely administrative work from their billing entries.  (Doc. 191 at 3.)  The Court finds that many entries related to administrative tasks such as scheduling, however, remain in Plaintiffs' time records.  (*See*, *e.g.*, Doc. 191-2 at Pageid # 11907, 11909.)

Entries such as scheduling and interoffice meetings attended by the legal assistant properly belong in office overhead.  *Gibson*, 2014 U.S. Dist. LEXIS 20576 at 10-11 ("A 'purely clerical or secretarial' activity is not billable at a paralegal's rate, or at any rate at all, because such tasks are included in office overhead.")  Therefore, in exercising its discretion to tax a reasonable number of hours, the Court must reduce the hours of the legal assistant by **250 hours**, and the hours of Fortune by **50 hours.**

### 5.  James Meaney's Hours

Defendants argue that James Meaney's hours should be reduced for several reasons: (1) he billed for time related to other cases, such as to "summarize relevant portions of Mark Myers deposition taken in Valentine case" (Doc. 194 at 34); (2) he spent time on claims that were ultimately unsuccessful, because he appeared on the case dockets only at the beginning of the cases, from September 29, 2013, until July 14, 2014.  (*id.* at 6, 34-35); (3) he spent time drafting a collective action complaint that was never filed (*id.* at 35); and (4) his time entries are block-billed and vague.  (*Id.*)

The Court finds these arguments to be grasping, and Defendants cite no case law to support them.  Summarizing a deposition of Defendant Myers in support of Plaintiffs' cases is

not invaluable work or double-billing. The asserted factual basis for disqualifying his time—that it was spent toward the beginning of the case—is speculative at best. Per Defendants' expert at the reasonableness hearing, a collective action complaint would have been an efficient use of resources for these cases; as such, the Court will not penalize Plaintiffs for an attempt at efficiency. *Macklin v. Delta Metals Co.*, No. 2:08-cv-02667, 2011 U.S. Dist. LEXIS 159025, at *9 (W.D. Tenn. July 6, 2011) ("The fact that some of that time was spent in pursuing issues on research which was ultimately unproductive, rejected by the court, or mooted by intervening events is wholly irrelevant. So long as the party has prevailed on the case as a whole the district courts are to allow compensation for hours expended on unsuccessful research or litigation, unless the positions asserted are frivolous or in bad faith.") Finally, the Court does not find Meaney's time entries to be vague or to suffer from issues with block billing.

Defendants' sole remaining argument is a suggestion that Meaney may have miscalculated his fees. (Doc. 194 at 35 n.11.) The Court reviewed each of his bills, however, and found that if there were any miscalculation, it was an *under-calculation* rather than an over-calculation.[10]

For the reasons stated above, the Court finds Meaney's hours to be reasonable, and declines to reduce them.

### 6. Fees for Fees

Although Defendants recognize that time spent preparing fee applications is generally compensable, (Doc. 194 at 36), they argue that the Court should abstain from awarding "fees for fees" in these cases, because: (1) the majority of counsel's time entries were improper, requiring

---

[10] The summary chart attached to Meaney's affidavit reflects invoice amounts (including carry-over from previous months) rather than hours billed, totaling **$18,092.50**. (Doc. 192-5 at Pageid # 12338.) The Court has calculated Meaney's fees from his bills as follows:

Defendants "to undertake the very expensive and time-consuming task of reviewing every single line item of Plaintiffs' bills" (*id.* at 37); (2) Plaintiffs' billing records contained charges for items counsel claims to have written off in the Motion for Attorney's Fees (*id.*); and (3) Plaintiffs' request for fees is "absurd" (*id.*).

The Sixth Circuit allows up to three percent of the hours in the main case for time spent preparing and litigating attorney's fees. *Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986). Defendants do not cite a case reducing or eliminating "fees for fees" for inefficiencies in litigating the underlying cases, imperfect time records, or inaccuracies contained in a Motion for Attorney's Fees. Instead, the case Defendants cite, *Coulter*, recognizes that "a lawyer should receive a fee for preparing and successfully litigating the attorney fee case after the original [civil rights] case is over." *Id.* The Sixth Circuit noted that attorney's fees capped at three percent of the fees in the underlying case (when it is resolved before trial) strikes the correct balance "to insure that the compensation from the attorney fee case will not be out of proportion to the main case and encourage protracted litigation." *Id.*

The Court declines Defendants' invitation to disallow "fees for fees" in this case, recognizing that Plaintiffs presented a fee case for nine underlying cases, which invariably involved a considerable amount of work. Therefore, the Court will award 3% for fees for fees.

### 7. Proportionality and Success

Finally, Defendants argue that Plaintiffs seek fees wholly out of proportion with both their counsel's litigation prowess and their ultimate recoveries in these cases. Defendants highlight the fact that few of Plaintiffs' claims survived the pleading stage, only one survived summary judgment, and half of the defendants were dismissed, (Doc. 194. at 25), and seek to reduce their fees accordingly. (*Id.* at 39-41.)

In response, Plaintiffs cite *Hensley v. Eckerhart*, 461 U.S. 424 (1993), arguing that "Plaintiffs are entitled to fees for all time reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney is compensated by a fee-paying client for all time reasonably expended on the matter." (Doc. 196 at 7.) As for unsuccessful claims, "the issue is whether Plaintiffs failed to prevail on claims that were unrelated to the claims on which they succeeded. Unrelated claims are those that rely upon different facts and legal theories—as if they had been raised in a separate lawsuit." (Doc. 196 at 7 (citing *Hensley*, 461 U.S. at 435).) Plaintiffs argue that their claims "were based upon the same facts and intertwined." (*Id.*) Specifically, Plaintiffs contend that their cases "were primarily about Defendants' violation of the FLSA" and distinguish early claims by stating that "the majority of the work done in these cases—over 80%—was done after those claims were dismissed." (*Id.*) They reaffirm the purposes behind FLSA and argue that disallowing fees would be a disincentive to taking these types of cases. (*Id.* at 8.)

According to the Sixth Circuit, "[a]n award based on the total number of hours reasonably expended on the litigation might . . . result in an excessive amount if the claimant has achieved only partial success." *Imwalle*, 515 F.3d at 552 (citing *Hensley*, 461 U.S. at 435). Indeed, the degree of success obtained is "the most critical factor governing the reasonableness of a fee award." *Smith v. Service Master Corp.*, 592 F. App'x. 363, 370–71 (6th Cir. 2014). If "a plaintiff obtains limited success, the district court should award only that amount of fees that is reasonable in relation to the success obtained." *Id.* (internal quotation omitted).

When Plaintiffs have only achieved partial success, the Court addresses: "(1) whether the claims on which Plaintiffs failed to prevail were or were not related to the claims on which he or she succeeded; and (2) whether Plaintiffs achieved a sufficient degree of success to render the

hours reasonably expended a satisfactory basis for awarding attorney fees." *Imwalle*, 515 F.3d at 552, (citing *Hensley*, 461 U.S. at 434.)

Only some of the claims on which Plaintiffs failed to prevail were "related to the claims on which [they] succeeded." *Id.* Plaintiffs succeeded only on FLSA wage and hour violations. Arguably, their contract claims were related to these wage and hour violations. Their discrimination and hostile work environment claims, however, were based on an alleged pattern of racially-motivated actions at the restaurant that had nothing to do with unpaid wages. And even though Plaintiffs obtained settlement funds for their FLSA wage and hour claims, they did not "achieve[ ] a sufficient degree of success to render the hours reasonably expended a satisfactory basis for awarding attorney fees." *Imwalle*, 515 F.3d at 552, (citing *Hensley*, 461 U.S. at 434).

In the operative complaint, Plaintiffs each sought the following relief:

a) Declaratory judgment that Defendant has engaged in creating and maintaining a hostile work environment on the basis of other Defendant Targeted Employees race and gender.

b) Declaratory judgment that the Defendant has engaged in retaliation against the Plaintiff for engaging in protected activity;

c) Declaratory judgment that the Defendant has engaged in race discrimination in employment against Plaintiff or the other Defendant Targeted Employees.

d) Judgment against Defendants, jointly and severally, for compensatory damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000), for emotional distress, humiliation, embarrassment and general loss of enjoyment of life;

c) An award of equitable relief for unpaid wages and pre-judgment interest thereon from the date Plaintiff was owed wages,

f) An award of damages, jointly and severally, recoverable for Plaintiffs emotional distress including apprehension of impending injury, pain and suffering, past and future medical expenses, and lost income;

g) An award of punitive damages, jointly and severally, in an amount in excess of Twenty-Five Thousand Dollars ($25,000) to which this Court deems Plaintiff is entitled;

h) An award of her reasonable attorneys fees, costs and expenses incurred to prosecute this action;

i) An award of liquidated damages on appropriate claims; and

j) Any and all additional relief as this Court deems just and proper under the circumstances.

(Doc. 33 at 45-46.) The settlements Plaintiffs obtained are confidential. However, they pertain only to the one FLSA wage and hours claim that survived summary judgment. And while they may have provided for "full relief for Plaintiffs for unpaid and underpaid wages. (Fortune Aff't, Doc. 197, ¶ 4), and a reasonable attorney's fee, they did not include much of the other relief sought, including declaratory judgments, equitable relief, or punitive damages.

Taking into account the Court's "overall sense of [the] suit," *Fox v. Vice*, 563 U.S. 826, 838 (2011), a reduction of the fee award is warranted because Plaintiffs did not "achieve[ ] a sufficient degree of success to render the hours reasonably expended a satisfactory basis for awarding attorney fees." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 434, 436 (1983)).

After more than four years of litigation, Plaintiffs received a small fraction of the relief sought. Moreover, as detailed above, Plaintiffs' counsel engaged in a variety of unnecessary, time-consuming and expensive maneuvers that did not ultimately achieve success for Plaintiffs. Therefore, the Court finds that a reduction in the total fee award of **thirty (30) percent** is necessary. *See Abernathy v. Corinthian Colleges, Inc.*, No. 2:10–CV–131, 2014 WL 4272723, at *24 (S.D. Ohio Aug. 29, 2014), *aff'd*, 2014 WL 4829612 (S.D. Ohio Sept. 29, 2014) ("In reaching this fee amount, the Court concludes that this award effects "rough justice." Although this across-the-board reduction is significant, the fee award is nevertheless substantial in light of the extensive billing deficiencies and modest success at trial." (internal citation omitted)); *Ohio*

*Right To Life Soc., Inc. v. Ohio Elections Comm'n*, 2013 WL 5728255, at \*16 (S.D.Ohio Oct. 22, 2013) ("Review of Plaintiffs' fee documentation makes clear that vast majority of the 780.75 hours expended were unrelated to its pursuit of the successful claims."); *Stewart v. CUS Nashville, LLC*, No. 3:11-cv-342, 2014 U.S. Dist. LEXIS 3033, at \*39 (M.D. Tenn. Jan. 10, 2014) (reducing fees by two-thirds based on "meager" results and time spent on unsuccessful claims); *Bell v. Prefix, Inc.,* 784 F.Supp.2d 778, 790 (E.D. Mich. 2011) (applying an eighty-percent reduction to fees requested because "the excessive billing is so egregious" and also noting that the 80% reduction was likely "generous").

In summary, based on the foregoing analysis, the Court finds the following to be a reasonable attorney's fee in this case:

| Timekeeper | Rate | Hours | Fee |
|---|---|---|---|
| **Meaney** | $325.00 | 55.67 | $18,092.50 |
| **Fortune** | $229.33 | 2,365.05 | $542,376.69 |
| **Shields** | $175.00 | 54.12 | $9,470.48 |
| **Paragiou** | $175.00 | 0.90 | $157.50 |
| **White** | $175.00 | 1.80 | $315.00 |
| **Derr** | $175.00 | 10.25 | $1,793.75 |
| **Gonzalez** | $1,500 flat | 0.00 | $1,500.00 |
| **Gradisar** | $1,000 flat | 0.00 | $0.00 |
| **Legal Assistant** | $85.00 | 123.06 | $10,460.10 |
| **Clerks** | $85.00 | 0.00 | $0.00 |
| **Less across-the-board reduction of 30% for limited success** | | | ($174,799.88) |
| | | Subtotal: | $407,866.38 |
| **Plus fees for fees" of 3%** | | | $12,235.99 |
| | | **Total:** | **$420,102.38** |

The Court believes that this fee structure appropriately balances the goals of FLSA in attaining competent counsel with the admonition not to let the attorney's fee provision provide a windfall to attorneys. *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007).

## C. Costs

In addition to a reasonable attorney's fee, FLSA provides for costs to the prevailing plaintiff. 29 U.S.C. § 216(b). Plaintiffs seek remuneration for **$102,325.72** in costs, including the following: (a) **$29,623.25** for deposition-related costs; (b) **$3,100** for the services of Gonzalez, Gradisar, and Matthews for issues tangentially related to the litigation; (c) **$13,500** for expert fees; (d) **$31,500** for Oberhousen-related "521-Data analysis and report fees"; and (e) **$24,602.47** for copies, process servers, filing fees, and miscellaneous expenses. (*See* Doc. 192-8.)

Defendants object to the vast majority of these costs, arguing that Plaintiffs are entitled to only $3,778.65. (Doc. 194 at 7.) In particular, Defendants seek a reduction for: (a) "unsubstantiated and excessive costs;" (b) "costs associated with their excluded expert witness;" (c) "costs that were incurred for other cases;" and (d) "costs related to Fortune's retention of attorneys to defend against the motion to disqualify." (Doc. 194 at 41-45.)

Regarding Defendants' first and third objections, the Court finds that Plaintiffs' costs are substantiated, but that they charged for costs incurred in other cases in addition to their own. For example, Plaintiffs charged for depositions taken in other cases that have settled to include attorney's fees. (*See supra*, section (III)(B)(1)). To account for any overlap, the Court will reduce Plaintiffs' costs associated with depositions by **ten percent (10%), or $2,962.33**. *See*

*Schumacher v. AK Steel Corp. Ret. Acc. Pension Plan*, 995 F. Supp. 2d 835, 853-55 (S.D. Ohio 2014).

As to Defendants' second and fourth objections, Plaintiffs may not recoup costs associated with expert witnesses (disqualified or not) or costs related to Fortune's retention of attorneys to defend against the motion to disqualify or the motion for sanctions for noticing Oberhousen as an expert. Regarding costs associated with expert witnesses, 29 U.S.C. § 216(b) does not allow this Court to reimburse Plaintiffs for expert witness fees. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301 (2006) ("[N]o statute will be construed as authorizing the taxation of witness fees as costs unless the statute refers explicitly to witness fees." (internal quotation marks and brackets omitted)); *Gortat v. Capala Bros., Inc.*, 795 F.3d 292, 296 (2d Cir. 2015) ("29 U.S.C. § 216(b) of the FLSA does not expressly address awards reimbursing prevailing plaintiffs for expert fees."); *Clark v. Shop24 Global LLC*, No. 2:12-cv-802, 2016 WL 3639893, at *13 (S.D. Ohio July 8, 2016). Therefore, the Court will disallow the costs associated with expert witnesses, or **$45,000**.[11] In addition, for the reasons stated in section (III)(B)(3), the Court will disallow the costs associated with Gradisar,[12] and Alvin Matthews.[13] Therefore, the Court will disallow an additional **$3,100** in costs.

In sum, the Court awards **$51,263.40 in costs**.

---

[11] This figure comprises fees associated with John Colgan, S. Weimerskirch, and 521 Hill Road Limited. Defendants argue that costs associated with 521 Hill Road Limited are inappropriate because that entity is owned by Fortune. (Doc. 194 at 42.) Plaintiffs respond that Fortune "did not own 521 Hill Road Limited at the time the contracts were entered into on behalf of his clients, or at the time charges were incurred." (Doc. 196 at 10.) Neither party has pointed the Court to a section of 28 U.S.C. § 1920 that would render these costs recoverable, regardless of whether Fortune owns 521, or whether Oberhousen is designated an expert.

[12] The Court also notes that Plaintiffs also attempted to recover the fees of Gonzalez and Gradisar as attorney's fees. (*See supra,* section (III)(B)(3)).

[13] Plaintiffs hired Alvin Matthews to conduct research into ethical issues related to ex parte communications. (Doc. 192-8 at Pageid # 12455.)

### D. Conclusion

For the reasons stated above, Plaintiffs' Motion for Attorney's Fees and Costs (Doc. 191) is **GRANTED with modifications**.  Plaintiffs are awarded **$420,102.38 in fees** and **$51,263.40 in costs.**

**IT IS SO ORDERED.**

      **/s/ Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  November 13, 2017**